[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION TO SET ASIDE VERDICT AND FOR NEW TRIAL (#155.50)
The present case is an action in negligence by a minor child, through her parent, to recover damages for injuries she received on March 5, 1999, after falling from a ski lift at the defendant's place of business, where she was skiing in an after-school program while in the fourth grade. Trial by jury commenced on October 10, 2002, and on October 16, 2002, the jury entered a verdict in favor of the defendant. On October 21, 2002, the plaintiffs filed the present motion to set aside the verdict, to which the defendant filed a written objection. The parties appeared at short calendar on December 16, 2002, for argument. For the following reasons, the motion is denied.
The minor plaintiff, Maggie O'Brien, testified that she was riding up ski lift number two at Ski Sundown on March 5, 1999, when boys in front of her began bouncing their chair, that the ski lift cable and her own chair then started rocking and swaying, and that she slipped under the lift bar, which she grabbed and held onto. Two classmates testified similarly. One of the friends admitted on cross-examination having said at a deposition that the plaintiff and she had been leaning forward on the chair lift and fooling around, although she knew they should not have been doing so. Miss O'Brien said that while she was hanging onto the bar, the ski lift chair jerked when the lift stopped, and she then let go and fell to the ground. Fortunately, none of the injuries she incurred were severe or life-threatening. Two other eyewitnesses to the accident, high school seniors who did not know the plaintiff and had been in the seventh grade at the time, also testified. They had been in a lift chair behind the minor plaintiff. Ashley DaCruz testified that she saw Miss O'Brien turn around and ask a friend what trail they were going to ride next. Ashley Makoski testified that the plaintiff turned around and talked to people behind her before falling.
A. Lack of expert testimony
CT Page 2905-cr
Although the court reserved decision on defendant's motion for a directed verdict, it would have set aside any verdict for the plaintiffs for lack of any expert evidence to establish that the design, operation, or any other aspect of the chair lift was defective or unsafe.
The requirement of expert testimony . . . serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard. Expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors.
(Citations omitted.) Lepage v. Horne, 262 Conn. 116, 125, 809 A.2d 505
(2002).
The factual question of whether the ski lift at defendant's establishment was safe is not a matter within the ken of the ordinary juror. Such a question involves matters of design, engineering, mechanics, and perhaps even compliance with industry standards, such as those promulgated by the American National Standards Institute (ANSI) and adopted by Connecticut[1] and many other states,[2] all questions requiring expert knowledge.
[T]he mechanics of ski lifts are outside common experience, and jurors would need the benefit of expert testimony before they could reasonably eliminate all probable causal negligence but that of the defendant-operator. Whether the defendant's ski lifts was unsafely or defectively designed or operated are questions outside "the ordinary knowledge and experience" of lay persons and thus required expert testimony.
Cowan v. Tyrolean Ski Area, Inc., 127 N.H. 397, 401, 506 A.2d 690
(1985). Several trial court decisions in this state have similarly held that expert testimony is necessary to establish the standard of care in the ski industry or breach thereof regarding other aspects of skiing.[3]
A standard practice aid for attorneys even advises that "the plaintiff should be prepared to establish the lift operator's negligence through expert evidence because the mechanics of ski lifts are outside the common experience of jurors." "Cause of Action against Ski Area Operator for Injury or Death Occurring on Ski Slope or Ski Lift," 5 C.O. A.2d 719, 778. This court thus agrees with the ruling on summary judgment:
The fifteen allegations of negligence in the complaint fall into three general categories; 1) that the ski lift chair on which the plaintiff was CT Page 2905-cs seated was unsafe; 2) that the defendant either failed to stop the lift when it should have, or started to lift when it should not have; 3) the defendant failed to monitor and supervise the lift in a safe manner. It is likely that the first and second categories of allegations will require expert testimony as they relate to matters which go beyond the ordinary knowledge and experience of jurors.
(Memorandum of Decision on Defendant's Motion for Summary Judgment, September 17, 2002, Pickard, J.)
On a pretrial basis, this court granted the defendant's motion in limine to exclude evidence of "alleged product defectiveness and/or safety of the chair lift" (file #132) because plaintiffs were not offering any expert testimony on those questions. Although both Miss O'Brien and her father testified that, unlike other ski lifts they had ridden, the one at Ski Sundown did not have a foot rest bar that would prevent someone from slipping off the chair, there was no expert testimony that such a foot rest bar was necessary to ensure her safety or within the ski lift operator's standard of care. Without expert testimony regarding the specific standard of care for a ski lift operator, and a breach of that standard by the defendant, or that defective design of the ski lift caused the plaintiff's injuries, the plaintiffs cannot establish that Ski Sundown breached its duty of care.
The court thus rejected plaintiffs' requests to charge 1 and 2 about the necessity of a ski rest as a "preventive measure." Such a charge would have required expert testimony, which neither party offered. Plaintiffs have presented no law or argument to cause this court to conclude it erred in so instructing the jury.
A second theory of liability the plaintiffs suggested through their evidence was that defendant had not adequately supervised the conduct of chair lift riders. The defendant offered evidence that members of the ski patrol and guest patrol were equipped with radios and regularly skied past the ski lifts checking for safety problems, but that there was no video or other continuous surveillance of people on the lifts. The pretrial court had denied a motion for summary judgment on this issue because plaintiffs had submitted an affidavit stating that the boys had "continued to bounce the lift line up and down after being instructed not to do so." There was no evidence introduced at trial, however, that on the day in question defendant had notice of the conduct of any boys bouncing the chair lift in front of Miss O'Brien. The plaintiff merely testified that she had once, at some unspecified other time, told a ski lift instructor at Ski Sundown that lift riders sometimes bounced their chairs and rock other riders. Without expert testimony as the appropriate standard of CT Page 2905-ct care for a ski lift operator as to the standard of care for a ski lift operator in terms of monitoring the lift and its riders and breach of that standard by defendant, or evidence that defendant had actual notice of the conduct of the boys in front of plaintiff that day, there was no basis for liability. See Fuller v. First National Supermarkets, Inc.,38 Conn. App. 299, 301, 661 A.2d 110 (1995); Gulycz v. Stop ShopCompanies, 29 Conn. App. 519, 521, 615 A.2d 1087 (1992).
B. Requests to charge
The plaintiffs claim that the court's failure to charge as they requested is a basis for setting aside the verdict and a new trial.
1. Plaintiffs' Request to Charge (RTC) re Standard of Care — RTC 13
The court instructed the jury to apply a standard of reasonable care to the defendant. This instruction was consistent with several of the plaintiffs' requests to charge:
that defendant had a duty to inspect the premises and erect safeguards to make the premises reasonably safe (RTC #4 and #10); and
that the measure of duty owed plaintiff by the defendant with respect to the condition of the premises was the exercise of reasonable care to have and keep them reasonably safe for the reasonably to be anticipated uses which he would make use of them (RTC #5).
Plaintiffs also requested an instruction that a ski lift operator "must exercise the highest duty of care . . . because these lifts are operated at considerable height from the ground over rough, elevated and dangerous terrain." (RTC #13.) Although not specifically so instructing the jury, the court incorporated much of that instruction by permitting the jury to consider any enhanced danger of riding a ski lift:
the more dangerous the circumstances, the greater the care that ought to be exercised and
Among the factors you may consider in determining whether or not a ski lift operator has met its duty of reasonable care, as well as others you find relevant, are the following:
(a) The danger or risks involved in riding a ski lift. As I told you earlier, the more dangerous an activity, the more care that a person must use. This applies both to the ski lift operator and to the rider of the ski lift. CT Page 2905-cu
Our legislature has imposed a duty on ski lift operators to "transport passengers safely." General Statutes § 29-202. The plaintiffs cited a Colorado case imposing a duty of highest degree of care on ski lift operators, Bayer v. Mountain Resort, Inc., 960 P.2d 70 (Colo. 1998). That case relied specifically on Colorado common law, and noted that Colorado legislation limiting liability for ski area operators for claims involving the inherent risks of skiing expressly did not apply to injuries caused by use or operation of ski lifts. There is no comparable appellate authority in Connecticut. Unlike the Colorado statute limiting liability of ski facilities, the Connecticut inherent danger law does not preclude its applicability to ski lifts. Section 29-212 of tie general statutes provides that skiers assume the risk of any injuries "arising out of the hazards inherent in the sport of skiing, unless the injury was proximately caused by the negligent operation of the ski area by the ski area operator." Boarding a tramway is expressly listed as one of those hazards. Moreover, the express language of the statute makes that list non-exclusive: "Such hazards include but are not limited to . . ." Section 29-201 (b) of the general statutes expressly excludes operators of passenger tramways, such as the ski lift here, from being considered common carriers subject to the highest degree of care. Connecticut's passenger tramway statute defines a "skier" as "a person utilizing the passenger tramway whether or not that person is a skier . . ." § 29-201
(e)(2). This court thus concludes that the standard of care owed by ski lift operators in Connecticut is a duty of reasonable care.
2. Duty to Inspect — RTC 4and 10
The court charged the jury that "[t]he defendant had the duty to use reasonable care to inspect and maintain its facilities and to make the operation of its facility reasonably safe." It gave significant instruction on that duty. The only significant element missing from plaintiffs' requested charge was any reference to "erect[ing] safeguards if necessary to render the premises reasonably safe." Absent expert evidence, there was no competent evidence as any safeguards that were necessary to make the defendant's establishment safe.
3. Unreasonable risk to children — RTC 3
The plaintiff requested an instruction that "a gap of twelve to fourteen inches on the chairlift[4] involved an unreasonable risk to plaintiff "because of the child's immaturity will not be aware of the risk." (sic) Although not mandating such a finding, the court's charge covered the plaintiffs' request by instructing the jury that the defendant had a special duty of care to children and that it could CT Page 2905-cv consider the minor plaintiff's age and maturity in determining whether defendant had satisfied its duty of care.[5]
4. Governmental safety inspections — RTC 16 and 17
The defendant offered evidence that state officials had inspected and approved the ski lift operation and issued an elevator certificate of operation. The court instructed the jury, as requested by plaintiff in RTC 16, that "that evidence is not controlling on you" as to whether defendant met its duty of due care.
The plaintiff also requested an instruction that certification or licensure of the ski lift was not material and that "what is material" were "the facts when Margaret O'Brien was injured." The court told the jury that it had the duty to find the facts about what happened on the day in question. It also instructed the jury that
[a] finding of compliance by the defendant with state agency standards for maintaining ski lifts would be satisfactory evidence of due care on its part. Compliance with a standard or prevailing practice in a matter of this kind may be evidence of due care.
The latter sentence of that charge comes directly from the case cited in plaintiff's request to charge, Hunyadi v. Stratfield Hotel, Inc.,143 Conn. 77, 83, 119 A.2d 321 (1955), which held that "[c]ompliance with a standard or prevailing practice in a matter of this kind may be evidence of due care. Just as compliance with OSHA regulations is evidence of due care; Wagner v. Clark Equipment Co., 243 Conn. 168, 191,700 A.2d 38 (1997); so is compliance with regulatory standards established by state officials responsible for elevator and ski lift operation.
5. Prior Acts and Foreseeability — RTC 7
Plaintiffs requested that the court charge the jury there was no requirement for them to prove prior incidents to prove negligence. The court's instruction essentially tracked their request. The court fully instructed on foreseeability with regards to negligence and causation and repeatedly instructed the jury that it alone was charged with the responsibility for determining the facts in the case.
6. Proximate Cause — RTC 11 and 12
Although plaintiffs complain about the court not charging the jury in accord with their requests numbers eleven and twelve, the court fully and CT Page 2905-cw adequately charged the jury on the law of proximate cause. The court told the jury that "[y]our decision must be based on reasonable probabilities in light of the evidence presented at trial," language that comports with their request eleven. The court was not obligated to marshal the evidence by referring to an "exposed area some 12"-14" through which someone of Maggie's size could easily fall," as plaintiff requested. Similarly, the court instructed the jury that multiple causation need not preclude a verdict for plaintiffs, though not in the language requested by plaintiffs.
C. Inherent Danger and Assumption of Risk
The plaintiffs' motion also challenges the court's charge on Connecticut's inherent danger statute, General Statutes § 29-212, which provides that "[e]ach skier shall assume the risk of and legal responsibility for any injury to his person or property arising out of the hazards inherent in the sport of skiing, unless the injury was proximately caused by the negligent operation of the ski area by the ski area operator, his agents or employees." They also seek to set aside the verdict for "charging assumption of risk not in accordance with Greenev. DiFazio, 148 Conn. 419 et seq., Plaintiff's Request to Charge."[6]
The court's charge on inherent risk and assumption of risk only applied to the defendant's first special defense, which the jury did not reach because it found no negligence on the part of the defendant. Even if plaintiffs are correct that the court misstated the law on these issues, however, these instructions thus could not have prejudiced the plaintiff, as they did not affect the verdict. Blancato v. Randino,30 Conn. App. 810, 815-16, 622 A.2d 1032 (1993); Kelley v. Bonney,221 Conn. 549, 586, 606 A.2d 693 (1992) ("[e]ven if the instruction were improper, it could not have affected the result of this case"). Thus, this portion of the court's charge is not a basis to set aside the verdict.
 BY THE COURT STEPHEN F. FRAZZINI JUDGE OF THE SUPERIOR COURT